# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

ROSCOE HUNTER,

    Movant,

v.

UNITED STATES OF AMERICA,

    Respondent.

Cv. No. 2:18-cv-02810-SHM-tmp
Cr. No. 2:17-cr-20076-SHM-01

**ORDER DENYING & DISMISSING MOTION PURSUANT TO 28 U.S.C. § 2255**
**ORDER DENYING CERTIFICATE OF APPEALABILITY**
**ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH**
**AND**
**ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court are the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") (ECF No. 1) filed by Movant, Roscoe Hunter, Bureau of Prisons ("BOP") register number 30175-076, an inmate at the Federal Correctional Institution ("FCI Memphis") in Memphis, Tennessee, and the Response of the United States. (ECF No. 8.) For the reasons stated below, Movant's § 2255 Motion is **DENIED**.

**I.    BACKGROUND**

    **A.    Criminal Case No. 2:17-cr-20076-SHM-01**

On March 30, 2017, a federal grand jury in the Western District of Tennessee returned an indictment against Hunter charging him with possessing a firearm after a felony conviction, in violation of 18 U.S.C. § 922(g). (Criminal ("Cr.") ECF No. 1.) On September 6, 2017, Hunter pled guilty without the benefit of a plea agreement. (Cr. ECF 26, Cr. ECF 28.)

The facts underlying Hunter's conviction were summarized and reviewed by the Sixth Circuit on direct appeal:

> On September 14, 2016, officers from the Memphis Police Department approached a residence to execute a search warrant and observed Hunter standing on the front porch. Hunter fled from the scene and, while running from the officers, threw a handgun over a chain-link fence in the front yard of the residence. Hunter was apprehended and later charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). In September 2017, having rejected the government's plea offer, Hunter entered an open plea of guilty to the indictment.

(Cr. ECF No. 56 at 2.)

The Presentence Report ("PSR") calculated a criminal history category of V and a total offense level of 23, resulting in an effective Guidelines range of 84 to 105 months. (Cr. ECF No. 41, Second Addendum to PSR.) The statutorily authorized maximum sentence was ten years. (Cr. ECF No. 39.) Hunter was interviewed by the probation officer and stated:

> I accept responsibility for possessing the firearm. I wasn't out to harm anybody and I will never possess one ever again.

(PSR ¶ 12.)

On December 11, 2017, defense counsel filed an objection to the PSR's two-level enhancement under United States Sentencing Guidelines ("U.S.S.G.") § 3C1.2 for reckless endangerment during flight (PSR ¶ 18). (Cr. ECF No. 40.) During the sentencing hearing, counsel withdrew the objection. (Cr. ECF No. 54 at 3.) On February 16, 2018, the Court conducted a sentencing hearing and accepted the PSR's findings of fact and conclusions of law. (*Id.* at 3-4.) The Court granted the United States' motion for the third point of acceptance, resulting in Hunter's receiving full credit for acceptance of responsibility. (*Id.* at 4.) The Court determined that Hunter's total offense level was 23 and the applicable guideline range was 84 to

105 months. (*Id.* at 4-6.) The Court sentenced Hunter to 84 months in prison. (Cr. ECF No. 48.)

Hunter appealed. Counsel filed a motion to withdraw in accordance with *Anders v. California*, 386 U.S. 738 (1967). The Sixth Circuit Court of Appeals determined that Hunter's guilty plea was valid and that his within-guidelines sentence was procedurally and substantively reasonable, expressly noting that Hunter's challenge to the application of the two-level enhancement for reckless endangerment during flight was waived by the withdrawal of the objection at sentencing. (Cr. ECF No. 56.)

### B.  Case Number 18-2810-SHM-tmp

On November 21, 2018, Hunter filed this § 2255 motion alleging that:

(1)  the Court erred in applying the two-level enhancement under U.S.S.G. §3C1.2 for reckless endangerment during flight and not considering Hunter's mental health or medications taken before sentencing (ECF No. 1 at 4, ECF No. 1-1 at 15-19);

(2)  counsel provided ineffective assistance by failing to object to the two-level enhancement under U.S.S.G. §3C1.2 for reckless endangerment during flight at the sentencing hearing and by failing to pursue the issue on direct appeal; and

(3)  counsel provided ineffective assistance by failing to request a mental health evaluation before sentencing. (*Id.* at 19-21.)

## II.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal. *See Bousley v. United States*, 523 U.S. 614, 621 (1998). "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). "Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id.*

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise those issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence." *Bousley*, 523 U.S. at 622.

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), Section 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

5

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. [*Strickland*, 466 U.S.] at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[1] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 104; *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just

---

[1] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland*, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

6

conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." (citing *Strickland*, 466 U.S. at 694)).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 105.

### III. ANALYSIS

Hunter has not met the prejudice prong for his claim of ineffective assistance because he does not allege that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Hunter does not deny his guilt. He seeks a lesser sentence.

#### A. <u>Issue One</u>

Hunter contends that the Court erred by applying the two-level enhancement under U.S.S.G. §3C1.2 for reckless endangerment during flight. (ECF No. 1-1 at 15-18.) The Sixth

Circuit has held that non-constitutional challenges to an advisory guidelines range are unavailable on collateral review in the § 2255 context.  *Snider v. United States*, 908 F.3d 183, 189 (6th Cir. 2018).  Other courts have generally agreed that advisory guideline errors cannot be fundamental defects warranting collateral relief.  *United States v. Foote*, 784 F.3d 931, 939 (4th Cir. 2015) ("[M]isapplication of the sentencing guidelines does not amount to a miscarriage of justice." (citation omitted)); *Spencer v. United States*, 773 F.3d 1132, 1139–42 (11th Cir. 2014) (en banc); *Hawkins v. United States*, 706 F.3d 802, 822–25 (7th Cir. 2013); *see also SunBear v. United States*, 644 F.3d 700, 705–06 (8th Cir. 2011) (en banc) (holding that even mandatory guideline errors are not fundamental defects).  Hunter's non-constitutional challenge to his advisory guidelines sentence is not cognizable under § 2255 and is **DENIED**.

Hunter contends that the Court erred by not considering Hunter's mental health or medications taken before imposing Hunter's sentence.  (ECF No. 1-1 at 18-19.)  A movant is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, if no contemporaneous objection was made and if the claim was not presented on direct appeal.  *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996).  Where a movant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under § 2255 only if the movant first demonstrates cause for the default and prejudice or that he is actually innocent. *Bousley*, 523 U.S. at 622.  Hunter makes no claim of actual innocence in this case.  Hunter attempts to demonstrate cause and prejudice for his default of this claim by alleging in Issue 3 that counsel provided ineffective assistance by failing to request a mental evaluation before sentencing.  That claim will be addressed below as a claim of ineffective assistance.

8

B.     **Issue Two**

Hunter contends that counsel provided ineffective assistance by failing to object to the two-level enhancement under U.S.S.G. §3C1.2 for reckless endangerment during flight at sentencing or pursue the issue on direct appeal. (ECF No. 1-1 at 19-21.) The United States responds that counsel made and withdrew the objection for strategic reasons and that this issue is without legal merit. (ECF No. 8 at 39, ECF No. 81- at 43-44.)

*Strickland*'s two-part test applies to claims that counsel was ineffective at sentencing. *See Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007). To meet the prejudice prong in the sentencing context, a petitioner must show a reasonable probability that, but for counsel's deficient performance, he would have received a lower sentence. *Id.* (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

Attorney Germany states, in pertinent part:

1.     Ground 1:  Mr. Hunter alleges that I was ineffective for failing to challenge the two-level enhancement for reckless endangerment during flight.  Initially, Counsel did include a challenge to the enhancement in his position paper but ultimately withdrew the objection after thorough consultation with the defendant.  The real question was whether Mr. Hunter wanted to challenge the facts in the PSR.  Because Mr. Hunter risked losing acceptance of responsibility, he chose not to object to the facts, namely that he ran towards the fence when officers arrived and they observed him discarding what turned out to be a loaded weapon over the fence.  On these facts, the law was clear that the enhancement applied because the weapon was in fact loaded with 12 rounds of ammunition as noted in the PSR and it was discarded during flight thus creating a danger.  Recently, the Sixth Circuit spoke on this precise issue in *United States v. Brooks*, [763 Fed. App'x 434, 440 (6th Cir. Feb. 13, 2019)]:

> There were two theories of how Brooks's conduct created a substantial risk of death or serious bodily injury to another person.  The first is that the discarded gun itself created a substantial risk.  The idea that a discarded gun creates a substantial risk of bodily harm to another person is well supported by caselaw.  This theory does not,

9

> however, apply here; Brooks's gun was unloaded. The cases on discarded guns make clear that the substantial risk of serious bodily injury stems from the gun's ability to fire. In some instances, the risk identified is that of the gun firing upon being dropped. *E.g. United States v. Howard*, 301 F. App'x 446, 448-49 (6th Cir. 2008). More often the risk is that the weapon would be fired when recovered – especially when there is a likelihood it would be discovered by a child or teenager. *United States v. Stafford*, 721 F.3d 380, 403 (6th Cir. 2013) ("[T]here was a significant possibility that a bystander could have come across the loaded weapon and been hurt, or used it to hurt someone else. These actions created a substantial risk of serious injury."); *United States v. May*, 430 F. App'x 520, 526 (6th Cir. 2011) ("[B]ecause it was possible that someone, whether an adult or child would recover and discharge the firearm, [the defendant] created a *risk* of death or serious bodily injury." (emphasis in original)). Obviously, both of these dangers are predicated on the gun being loaded. Brooks's unloaded gun was incapable of creating this sort of substantial risk of serious bodily injury.
>
> The district court, however, based its application of the reckless-endangerment enhancement on the second theory: that by drawing a gun in front of officers, Brooks provoked a substantial risk that officers would open fire and perhaps injure other officers or bystanders. This theory of reckless endangerment is also supported by our caselaw, and it does not hinge on whether the gun was loaded or unloaded. Because officers are not expected to know whether a firearm is loaded or unloaded, pulling out any firearm in view of police officers while in flight creates a risk that officers might fire their weapons. *United States v. Tasaki*, 510 F. App'x 441, 444-45 (6th Cir. 2013).

*United States v. Brooks*, [763 Fed. App'x at 440.]

> Based on the facts adduced in the PSR, the enhancement applied. It should be noted that the possibility of the enhancement was discussed at the plea colloquy as Undersigned represented Mr. Tasaki in his appeal of Judge Mays' decision in that case. Mr. Hunter was fully advised prior to pleading guilty that the chance of prevailing on this issue was exceedingly remote.

(ECF No. 8-1 at 2-3.)

10

Had Hunter pursued the objection he risked losing the three-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. When Hunter advised the Court of his decision to plead guilty without the benefit of a plea agreement, the Court discussed Hunter's risk of losing acceptance credit or part of acceptance credit if Hunter denied the facts or relevant conduct during the plea colloquy. (Cr. ECF No. 53 at 7-9.) During the plea colloquy the Court and counsel discussed the *Tasaki* case with Hunter. (*Id.* at 11-14.) The decision to withdraw the objection was based on counsel's well-reasoned advice. It was a reasonable strategic decision. Counsel had no duty to raise objections or to raise claims on direct appeal that lacked a legal basis. Counsel did not perform deficiently. Issue Two is without merit and is **DENIED**.

### B.      Issue Three

Hunter contends that counsel provided ineffective assistance by filing to request a mental health evaluation before sentencing because the record is clear that "Hunter was placed in a mental health State facility under the case of [psychologists]/doctors prior to committing the offense" and "substantial information indicates that the defendant may be presently suffering from mental health disease or defect for mental treatment." (ECF No. 1-1 at 18-21.) Hunter also contends that "the PSR included that Mr. Hunter was institutionalized for mental health treatment in a State facility that should have given the court concerns that Hunter may have not known he committed the offense of possessing a firearm 'mentally', which would have changed the outcome of both conviction and sentence if found by a [psychologist] to be incompetent at the time the offense was committed." (*Id.* at 19.) The United States responds that the PSR did not say that Hunter had spent time in a state mental health facility and defense counsel denies that Hunter requested a mental evaluation. (ECF No. 8 at 6-7.)

Attorney Germany states, in pertinent part:

11

1. Ground 2: Mr. Hunter alleges that he requested a mental health evaluation prior to sentencing from Undersigned. First, said request was never made by Mr. Hunter. Second, Undersigned did not believe that an evaluation would be helpful in any way at sentencing. Although Mr. Hunter claims to have spent time in a state mental health facility, this information was not contained in the PSR. The only mental health information in the PSR, provided by Mr. Hunter in the probation officer's interview, was that Mr. Hunter suffered from anxiety, which is quite common for defendants facing jail time.

(ECF No. 8-1 at 3.)

During the change of plea hearing, Hunter was placed under oath and the following colloquy took place:

The Court: Have you used any drugs or alcoholic beverages in the last 24 hours?

Hunter: No sir.

The Court: Have you ever been under the care of a psychiatrist or any other mental health professions?

Hunter: Yes, sir.

The Court: Are you under the care of a mental health professional today?

Hunter: No, sir.

The Court: How long has it been since you were under the care of a mental health professional?

Hunter: Been like five or six years.

The Court: Okay.

Hunter: Six years ago.

The Court: You're 27. So it was when you were in your early 20's; is that right?

Hunter: Yes, sir.

The Court: Who was the mental health professional?

Hunter: It was back at – in Nashville. I don't remember they [sic] names.

The Court: Was it a psychiatrist, a psychologist, a counselor? Who did you see?

Hunter: I don't know who I – I went to a mental health hospital.

The Court: Okay. What was your diagnosis?

Hunter: I'm not sure.

The Court: Were you given any medication?

Hunter: They gave me some medicine, but I didn't take it.

The Court: You did not take the medication. Do you remember what you were prescribed?

Hunter: No, sir.

The Court: Do you remember anything about your diagnosis?

Hunter: No, sir.

The Court: Had you ever been treated by a mental health professional before?

Hunter: The time when I went to Nashville, that was like the only time.

The Court: That's the only time. And you can't remember your diagnosis.

Hunter: Since I've been here, I think they diagnosed me with, like, anxiety, anxiety.

The Court: Where were you diagnosed with anxiety? Here at the Mason facility?

Hunter: Yes, sir.

The Court: Have you been given medicine for that?

Hunter: Yes, sir.

The Court: Do you take it?

Hunter:      Yes, sir.

The Court:   What is it?

Hunter:      It's called Buspar.

The Court:   What's it called?

Hunter:      Buspar, I don't know – that's what-

The Court:   I'll take your word for it. Does it work for you? Does it reduce your anxiety?

Hunter:      Sort of.

The Court:   Do you take any other prescription medication?

Hunter:      No, sir.

The Court:   Have you had any diagnosis that you can remember other than anxiety?

Hunter:      No, sir.

The Court:   How are you feeling today?

Hunter:      I'm all right but I ain't used to this but, you know, I'm okay.

The Court:   Well, I understand. Now, are you thinking clearly?

Hunter:      Yes, sir.

The Court:   Can you make major decisions for yourself today?

Hunter:      Yes, sir.

The Court:   Can you understand and answer my questions?

Hunter:      Yes, sir.

The Court:   Do you have any question about Mr. Hunter's competency, Mr. Germany?

Germany:     No, Your Honor.

> The Court: Mr. Young.
>
> Young: No, Your Honor.
>
> The Court: Do you understand what's going on in the courtroom here today, Mr. Hunter?
>
> Hunter: Yes, sir.

(Cr. ECF No. 53 at 16-20.) The record demonstrates that the Court considered Hunter's mental health and medications before determining that Hunter was competent to enter his plea. (*Id.* at 22.) Hunter's rational discourse throughout the plea and sentencing proceedings provide cogent evidence of Hunter's competency. Counsel's recollection and affidavit are fully supported by the record.

Hunter has provided no psychiatric or psychological records or reports to rebut counsel's affidavit or the record in the criminal case. Absent any factual report, Hunter's conclusory allegation that he should have received a mental evaluation before sentencing is insufficient to support a request for relief under § 2255. *See Oliver v. United States*, 961 F.2d 1339, 1343 n. 5 (7th Cir. 1992) ("No hearing is required in a section 2255 proceeding if the motion raises no cognizable claim, if the allegations in the motion are unreasonably vague, conclusory, or incredible[.]"). Issue Three is **DENIED**.

## IV. CONCLUSION

The motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Defendant's conviction and sentence are valid and, therefore, his motion is **DENIED**. Judgment shall be entered for the United States.

## V. APPELLATE ISSUES

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability

("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate. The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2), (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337). In this case, for the reasons previously stated, Movant's claims lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ. The Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or

otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is **DENIED**. If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days (*see* Fed. R. App. P. 24(a) (4)-(5)).

**IT IS SO ORDERED,** this 24th day of May 2021.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE